UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY; and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | ) ) ) | CASE NO. |
| Plaintiffs, | ) ) ) | COMPLAINT FOR DECLARATORY RELIEF |
| v. | ) ) ) | |
| DAVID C. EBENAL, an individual; and ROCKPORT HOLDINGS, LLC, a Washington limited liability company, | ) ) ) ) | |
| Defendants. | ) ) | |

## I.     PARTIES

1.1.     Plaintiff Zurich American Insurance Company (hereinafter "ZAIC") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.   ZAIC is authorized to transact insurance business in the State of Washington and has transacted business in King County, Washington.

1.2.     Plaintiff American Guarantee and Liability Insurance Company (hereinafter "AGLIC") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  AGLIC is

COMPLAINT FOR DECLARATORY RELIEF - 1
CASE NO.
#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1 authorized to transact business in the State of Washington and has transacted business in King
2 County, Washington.

3     1.3.    Defendant David C. Ebenal (hereinafter "Ebenal") is an individual domiciled in
4 Whatcom County, Washington and is a citizen of the State of Washington.

5     1.4.    Defendant Rockport Holdings, LLC (hereinafter "Rockport") is a limited liability
6 company organized under the laws of the State of Washington, with its principal place of business
7 in Bellingham, Whatcom County, Washington.  Members of Rockport are David C. Ebenal, a
8 citizen of the State of Washington, and Bonita L. Ebenal, a citizen of the State of Washington.

9
10     II.    JURISDICTION AND VENUE

11     2.1.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.
12 § 1332 because there is complete diversity of citizenship between plaintiff and defendant, and the
13 amount in controversy exceeds $75,000 exclusive of interest and costs.

14     2.2.    The court has subject matter jurisdiction over this action for a declaratory judgment
15 pursuant to 28 U.S.C. § 2201, because an actual justiciable controversy exists between the parties
16 within the court's jurisdiction, as described more fully herein.

17     2.3.    The Court has personal jurisdiction over defendant Ebenal because Ebenal is
18 domiciled in the State of Washington, and the dispute from which this action arises occurred
19 principally in Whatcom County, Washington.

20     2.4.    The Court has personal jurisdiction over defendant Rockport because Rockport has
21 its principal place of business in the State of Washington and has regularly and continuously been
22 doing business in the State of Washington at all times material to this action.

23     2.5.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because defendants Ebenal and
24 Rockport reside in Whatcom County, Washington.  Venue also is proper pursuant to 28 U.S.C.
25 § 1391(b)(2) because a substantial part of the events from which the underlying action arose took
26 place in Whatcom County, Washington, which is within the judicial district of the United States
27 District Court for the Western District of Washington. Specifically, this action arises from a

COMPLAINT FOR DECLARATORY RELIEF - 2
CASE NO.
#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  dispute over insurance coverage for an underlying legal action taking place in the Superior Court
2  of Washington for Whatcom County, concerning the sale of land located in Bellingham, Whatcom
3  County, Washington.

4

5                                    III.    FACTS

6              Zurich American Insurance Company – Primary Insurance Policies

7       3.1.    ZAIC issued commercial general liability insurance coverage under policy number
8  CPO 3999893-01 to first named insured Ebenal General, Inc., with additional named insureds that
9  include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this
10  insurance policy.  The inception date of this insurance policy was August 27, 2007 and the
11  expiration date was August 27, 2008.

12       3.2.    ZAIC issued commercial general liability insurance coverage under policy number
13  CPO 3999893-02 to first named insured Ebenal General, Inc., with additional named insureds that
14  include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this
15  insurance policy.  The inception date of this insurance policy was August 27, 2008 and the
16  expiration date was August 27, 2009.

17       3.3.    ZAIC issued commercial general liability insurance coverage under policy number
18  GLA 3999893-03 to first named insured Ebenal General, Inc., with additional named insureds that
19  include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this
20  insurance policy.  The inception date of this insurance policy was August 27, 2009 and the
21  expiration date was August 27, 2010.

22       3.4.    ZAIC issued commercial general liability insurance coverage under policy number
23  GLA 3999893-04 to first named insured Ebenal General, Inc., with additional named insureds that
24  include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this
25  insurance policy.  The inception date of this insurance policy was August 27, 2010 and the
26  expiration date was August 27, 2011.

27

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.5.     ZAIC issued commercial general liability insurance coverage under policy number GLA 3999893-05 to first named insured Ebenal General, Inc., with additional named insureds that include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this insurance policy.  The inception date of this insurance policy was August 27, 2011 and the expiration date was August 27, 2012.

American Guarantee and Liability Insurance Company – Commercial Umbrella Policies

3.6.     AGLIC issued commercial umbrella liability insurance policy number AUC 9261844 00 to first named insured Ebenal General, Inc., with additional named insureds that include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this insurance policy.  The inception date of this insurance policy was August 27, 2007 and the expiration date was August 27, 2008.

3.7.     AGLIC issued commercial umbrella liability insurance policy number AUC 9261844 01 to first named insured Ebenal General, Inc., with additional named insureds that include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this insurance policy.  The inception date of this insurance policy was August 27, 2008 and the expiration date was August 27, 2009.

3.8.     AGLIC issued commercial umbrella liability insurance policy number AUC 9261844 02 to first named insured Ebenal General, Inc., with additional named insureds that include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this insurance policy.  The inception date of this insurance policy was August 27, 2009 and the expiration date was August 27, 2010.

3.9.     AGLIC issued commercial umbrella liability insurance policy number AUC 9261844 03 to first named insured Ebenal General, Inc., with additional named insureds that include Rockport Holdings, LLC.  David Ebenal is not an additional named insured on this insurance policy.  The inception date of this insurance policy was August 27, 2010 and the expiration date was August 27, 2011.

COMPLAINT FOR DECLARATORY RELIEF - 4
CASE NO.
#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.10.   AGLIC issued commercial umbrella liability insurance policy number AUC 9261844 04 to first named insured Ebenal General, Inc., with additional named insureds that include Rockport Holdings, LLC.   David Ebenal is not an additional named insured on this insurance policy.   The inception date of this insurance policy was August 27, 2011 and the expiration date was August 27, 2012.

The Underlying Civil Action

3.11.   On September 21, 2018, Terra Firma Bellingham, LLC (hereinafter "TFB") filed a civil action in the Superior Court of Washington for Whatcom County, cause no. 18-2-01808-37 (hereinafter "Underlying Action"), against defendants David Ebenal, Rockport Holdings, LLC, Ronald Jepson, and Ronald T. Jepson & Associates, P.S.

3.12.   In the complaint filed in the Underlying Action (hereinafter "Underlying Complaint"), TFB alleged that in May 2016, Ebenal began negotiating the sale of property owned by Rockport to TFB for development as a marijuana grow operation.

3.13.   The Underlying Complaint further alleged that the property had been used by Ebenal as a controlled fill site for "several years."

3.14.   The Underlying Complaint further alleged that Ebenal made certain representations to attorney David Otto calculated to induce TFB to purchase the property, including (a) Ebenal and/or Rockport were "in the process of getting the entire site Light Industrially zoned; (b) the City of Bellingham was supportive of the rezone; (c) the property was a "slam dunk" for marijuana cultivation, and that Ebenal and/or Rockport had addressed wetlands issues on the property.

3.15.   The Underlying Complaint further alleged that Ebenal disclosed that only the western half of the property (9.61 acres) was currently zoned "multi-industrial" and that the other half (also 9.61 acres) was zoned multi-residential, and that Ebenal represented that nothing about the eastern half would prevent it from being rezoned to multi-industrial.   The Underlying Complaint further alleged that Ebenal had "emphasized" that TFB could double the buildable industrial area by rezoning, increasing the value of the property by almost $1 million.

COMPLAINT FOR DECLARATORY RELIEF - 5
CASE NO.
#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.16.   The Underlying Complaint further alleged that Ebenal represented that the only other impediment to development of the entire site was the need for a new bridge and driveway to access the property.  Allegedly, Ebenal represented that this could be accomplished by updating a wetlands permit, which would allow construction of the new bridge before the City of Bellingham reviewed the entire planned project.  Allegedly, Ebenal represented that a new bridge would cost $200,000 to construct.

3.17.   The Underlying Complaint further alleged that professional engineer Ronald Jepson had performed engineering services for Ebenal on the property and that Jepson owned nearby property that was under development.  Allegedly, Mr. Jepson showed TFB's managing member drawings and maps of the property to identify various features of the property, including the area occupied by wetlands, which was "only a small area on the eastern edge of the property." Allegedly, Ebenal had introduced Mr. Jepson as someone who was "extremely knowledgeable about the property."  Allegedly Mr. Ebenal subsequently sent TFB an email message containing a sketch and suggesting that TFB could construct several buildings on the site, including a 30,000 square foot building.  Allegedly, Ebenal also represented to TFB that he had completed almost all wetland remediation work on the property, and that the property could physically support a 30,000 square foot greenhouse that would meet TFB's needs.  A

3.18.   The Underlying Complaint further alleged that in July 2016, TFB purchased the property largely on the basis of Ebenal's representations.

3.19.   The Underlying Complaint further alleged that an addendum to the purchase and sale agreement provided that (a) the parties would split the cost of a new bridge, with each contributing $100,000, and Ebenal's share was deducted from the sale price of the property; (b) Rockport would have a "right of last refusal" to perform any construction work on the property; (c) Rockport would recommend a team of consultants and work with them as a consultant to obtain a permit to construct a 40,000 square foot building; (d) Rockport would remove "all concrete and other 'scrap'" from the property if it could not be used to develop roads on the property; and (e) TFB's obligation to purchase the property was contingent on TFB securing a "Tier 3" producer

COMPLAINT FOR DECLARATORY RELIEF - 6
CASE NO.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

and processor license from the Washington State Liquor and Cannabis Board (hereinafter "WSLCB").

3.20.    The Underlying Complaint further alleged that Ebenal exercised Rockport's "right of last refusal" and elected to perform construction of the new bridge.

3.21.    The Underlying Complaint further alleged that Ebenal began clearing the property and installing temporary structures and utilities in preparation for inspection by the WSLCB, but that Ebenal had not secured permits from the City of Bellingham before performing that work. Allegedly Ebenal's failure to obtain permits resulted in a delay of future construction.

3.22.    The Underlying Complaint further alleged that Ebenal contracted with a third party to fabricate girders for the replacement bridge, but the City of Bellingham refused to issue a permit for bridge construction until the entire development plan was approved.  Allegedly, the order for bridge girders was placed so far in advance of potential permit approval that TFB was required to pay for off-site storage of the girders for approximately one year.  Allegedly, TFB later learned that Ebenal's relationship with the City's permitting officials was "strained" due to a history of code violations and dishonest conduct.

3.23.    The Underlying Complaint further alleged that Ebenal failed to perform his other obligations under the addendum to the purchase and sale agreement, and that when contacted by TFB, he initially failed to provide meaningful responses and then instructed Mr. Otto to direct any further communications to Ebenal's attorney.

3.24.    The Underlying Complaint further alleged that in August 2017, Ebenal entered the property without permission and removed metal plates from the existing bridge, making the bridge impassible and blocking access to the property.  Allegedly TFB was required to rent a set of metal plates and pay a third party to repair damage to the bridge.

3.25.    The Underlying Complaint further alleged that in January 2018, TFB received a permit to replace the bridge.  Allegedly, TFB hired a third party to construct the bridge because Ebenal/Rockport had defaulted on contractual obligations.  Allegedly, the bridge construction had "significant cost overruns" beyond Ebenal's $200,000 estimate.

COMPLAINT FOR DECLARATORY RELIEF - 7
CASE NO.

#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.26.    The Underlying Complaint contains allegations regarding Jepson's participation in the project to obtain a rezone for the eastern half of the property.  These allegations do not directly implicate Ebenal or Rockport, except that Jepson allegedly told TFB that due to wetland mitigation requirements, the rezone would only add 1.5 acres of buildable land to the property.

3.27.    The Underlying Complaint further alleged that despite the "setback caused by the required wetland mitigation," TFB still expected to build two greenhouses on the western half of the property.

3.28.    The Underlying Complaint further alleged that in March 2017, TFB hired a geological consultant to perform compaction tests to ensure the soil could support the planned greenhouses.  Allegedly, the consultant determined that the property could not support the greenhouses "without installing expensive pin pilings or performing extensive remediation efforts."

3.29.    The Underlying Complaint further alleged that Ebenal disputed the consultant's conclusions, and he asserted that an engineering firm that was "very familiar" with the property had observed soil compaction at the property and would certify that soil imported to the site was of good quality and was properly compacted.

3.30.    The Underlying Complaint further alleged that TFB contracted with the engineering firm to dig test holes and certify the results, the engineering firm's representative dug some test holes, and the engineering firm's representative then refused to certify any compaction test and stated that previously he had witnessed only a small portion of the property being compacted because Ebenal had refused to pay the cost of observing compaction of the entire site.

3.31.    The Underlying Complaint further alleged that TFB retained another engineering firm to perform additional compaction tests and provide definitive results, and that the new engineering firm confirmed that most of the soil on the western half of the site was uncompacted clay that could not support "even a relatively light structure, such as a greenhouse."

COMPLAINT FOR DECLARATORY RELIEF - 8
CASE NO.
#5094752 v1 / 10007-596

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.32.   The Underlying Complaint further alleged that TFB hired an excavating contractor to grade the western half of the site, and that from September through December 2017 the contractor removed approximately 16,000 yards of inferior soil at TFB's expense.

3.33.   The Underlying Complaint further alleged that in October 2017, the engineers retained by TFB detected "toxic, diesel-soaked soil" on the site, which TFB remediated by removing approximately 22 truckloads of contaminated soil.  Allegedly, Ebenal previously had stated that the site was free of potential environmental contaminants.

3.34.   The Underlying Complaint further alleged that in September 2017, Ebenal contacted TFB and demanded to know why he had not been allowed to perform construction activity at the site pursuant to his "right of last refusal."

3.35.   The Underlying Complaint further alleged that in early 2018, TFB chose to suspend the project after encountering difficulties in obtaining a building permit from the City of Bellingham for the greenhouses.  Allegedly, TFB put the property up for sale but was unable to find buyers willing to pay a price that accounted for the expenses TFB already had invested.

3.36.   The Underlying Complaint alleged a cause of action against Ebenal and Rockport for breach of contract.  The Underlying Complaint alleged that Ebenal should be personally liable because he had failed to observe the formalities separating "his LLCs" from his personal affairs, and that he had attempted to use "these entities" to facilitate fraudulent conduct.

3.37.  The specific acts and omissions alleged to be breaches of contract in the Underlying Complaint were (a) failing to remove concrete or scrap material from the property; (b) ordering bridge girders so far ahead of schedule that storage fees were required, before abandoning the bridge replacement project altogether; and (c) failing to coordinate with TFB, the City of Bellingham, and "other professionals" during preparations for the WSLCB inspection, the bridge construction, or "anything connected to TFB's development of the property."

3.38.   The Underlying Complaint alleged a cause of action against Ebenal and Rockport for fraudulent misrepresentation.  The Underlying Complaint alleged that Ebenal should be

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    personally liable because he had failed to observe the formalities separating "his LLCs" from his

2    personal affairs, and that he had attempted to use "these entities" to facilitate fraudulent conduct.

3    3.39.    The specific acts and omissions alleged to be fraudulent misrepresentations in the

4    Underlying Complaint were (a) falsely stating that the soil on the property was of a variety and

5    compaction sufficient to support a 30,000 square foot structure; (b) making false representations

6    regarding the quantity of unmitigated wetlands on the property; and (c) omitting to mention toxic

7    waste on the property.  Allegedly, Ebenal knew the "false and/or concealed facts" would influence

8    TFB's decision to buy the property and intended that TFB would rely on Ebenal's assurances.

9    3.40.    The Underlying Complaint alleged a cause of action against Ebenal and Rockport

10   for negligent misrepresentation.  The Underlying Complaint alleged that Ebenal should be

11   personally liable because he had failed to observe the formalities separating "his LLCs" from his

12   personal affairs, and that he had attempted to use "these entities" to facilitate fraudulent conduct.

13   3.41.    The specific acts and omissions alleged to be negligent misrepresentations in the

14   Underlying Complaint were the same conduct alleged to be fraudulent misrepresentations, except

15   that the Underlying Complaint alleges that Ebenal affirmatively provided false information

16   concerning the presence of toxic waste on the property.  Allegedly, Ebenal was negligent in

17   continuing to assert misrepresentations to TFB without confirming the accuracy of his assertions.

18   3.42.    The Underlying Complaint alleged a cause of action against Ebenal and Rockport

19   for violation of the Washington Consumer Protection Act.  The Underlying Complaint alleged that

20   Ebenal should be personally liable because he had failed to observe the formalities separating "his

21   LLCs" from his personal affairs, and that he had attempted to use "these entities" to facilitate

22   fraudulent conduct.  The Underlying Complaint did not identify the specific acts or omissions that

23   were alleged to be unfair and deceptive acts under the Consumer Protection Act other than to allege

24   they were "Ebenal's actions (alleged above)."

25   3.43.    The Underlying Complaint alleged a cause of action against Ebenal and Rockport

26   for unjust enrichment.  The Underlying Complaint alleged that Ebenal should be personally liable

27   because he had failed to observe the formalities separating "his LLCs" from his personal affairs,

#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    and that he had attempted to use "these entities" to facilitate fraudulent conduct.  The acts or

2    omissions alleged to constitute unjust enrichment were (a) TFB conferred benefits on Ebenal in

3    the form of payment for the property and a portion of the cost of bridge construction; (b) Ebenal

4    appreciated and knew "these benefits" were valuable; and (c) the "circumstances were such that

5    Ebenal's acceptance or retention of these benefits would be inequitable without repayment for

6    their value."

7         3.44.    The Underlying Complaint alleged a cause of action against Ebenal for breach of

8    the implied duty of good faith and fair dealing.  Although this cause of action was not alleged

9    against Rockport, the Underlying Complaint alleged that Ebenal should be personally liable

10   because he had failed to observe the formalities separating "his LLCs" from his personal affairs,

11   and that he had attempted to use "these entities" to facilitate fraudulent conduct.

12        3.45.    The specific acts and omissions alleged to be breaches of the implied duty of good

13   faith and fair dealing in the Underlying Complaint were (a) "failing to cooperate with TFB, the

14   City of Bellingham, and others"; and (b) failing to perform obligations under the purchase and sale

15   agreement in good faith.

16        3.46.    The Underlying Complaint requested money damages, attorney fees, and treble

17   damages "as provided by statute, common law, or equity."

18                       <u>Tender of Defense of the Underlying Action</u>

19        3.47.    After the Underlying Complaint was filed in September 2018, Ebenal and Rockport

20   appeared and defended the Underlying Action through attorneys whom they had retained.

21        3.48.    Approximately two years and three months after the Underlying Action was filed,

22   Ebenal and Rockport tendered defense and indemnity to ZAIC and other insurers for the first time.

23        3.49.    ZAIC has agreed to defend Ebenal and Rockport in the Underlying Action, subject

24   to a reservation of the right to contest insurance coverage.  Arch Specialty Insurance Company

25   ("Arch") also has agreed to defend Ebenal and Rockport under a reservation of rights.  Arch has

26   filed a declaratory judgment action against Ebenal and Rockport in the United States District Court

27   for the Western District of Washington, case no. 2:21-cv-01272-TSZ.

COMPLAINT FOR DECLARATORY RELIEF - 11
CASE NO.
#5094752 v1 / 10007-596

Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

IV.   FIRST CLAIM FOR RELIEF: DECLARATORY JUDGMENT RE
PRIMARY INSURANCE POLICIES ISSUED BY ZAIC

4.1.     Plaintiffs reallege the allegations in paragraphs 1.1 through 3.49 as if fully set forth herein.

4.2.     Each of the commercial general liability insurance policies identified in paragraphs 3.1 through 3.5 herein (hereinafter "Primary Policies") provides in the section regarding the insured's duties in the event of an occurrence, offense, claim, or suit that the insured shall not, except at the insured's own cost, make any payment, assume any obligation, or incur any expense (other than for first aid) without ZAIC's consent.  Ebenal and Rockport breached this policy condition by defending the Underlying Action for more than two years before tendering defense and indemnity for the Underlying Action to ZAIC.  This clause also precludes any coverage for Ebenal's and Rockport's pursuit of counterclaims against TFB.

4.3.     Each of the Primary Policies provides, pursuant to the form "Contractors Liability Insurance – Two or More Coverage Forms or Policies Issued by Us,"  the maximum total limit of liability under any combination of the Primary coverage that might apply to the Underlying Action is the highest limit of liability set forth in any one of the applicable Primary Policies.

4.4.     The insuring agreement for Coverage A in each of the Primary Policies provides in relevant part that the policy will provide coverage for amounts an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that take place during the policy period and is caused by an "occurrence" as defined in the Policies.

4.5.     The Underlying Complaint does not allege any cause of action against Ebenal or Rockport arising from "bodily injury" or "property damage" as defined in the Primary Policies, other than alleged damage to a bridge claimed to have been caused by Ebanal's alleged removal of steel plates.

4.6.     The Underlying Complaint does not allege any cause of action against Ebenal or Rockport caused by an "occurrence" as defined in the Primary Policies.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1      4.7.     The Underlying Complaint does not allege any cause of action against Ebenal or

2    Rockport arising from "bodily injury" or "property damage" that took place during the policy

3    periods of the Primary Policies.

4      4.8.     The insuring agreement for Coverage B in each of the Primary Policies provides in

5    relevant part that the Policy will provide coverage for amounts an insured becomes legally

6    obligated to pay as damages because of "personal and advertising injury" (as defined in the

7    Policies) that takes place during the policy period.

8      4.9.     The Underlying Complaint does not allege any cause of action against Ebenal or

9    Rockport arising from "personal and advertising injury" as defined in the Primary Policies.

10      4.10.    The Underlying Complaint does not allege any cause of action against Ebenal or

11    Rockport arising from "personal and advertising injury" that took place during the policy period

12    of the Primary Policies.

13      4.11.    To the extent the Underlying Complaint may be interpreted to allege liability

14    because of "property damage" as defined in the Primary Policies, such "property damage" either

15    did not occur while any of the Primary Policies were in effect, or liability because of such "property

16    damage" is subject to exclusions set forth in the Policies.

17      4.12.    Coverage under each of the Primary Policies also is eliminated by exclusions set

18    forth in the Policies, including:

19      (a) property damage to property owned, rented, or occupied by the named insured, pursuant

20         to exclusion j(1);

21      (b) property damage to premises the named insured sells, gives away, or abandons, if the

22         property damage arises out of any part of those premises, pursuant to exclusion j(2);

23      (c) property damage to that particular part of real property on which the named insured or

24         its contractors or subcontractors are performing operations, if the property damage arises

25         out of those operations, pursuant to exclusion j(5);

26

27

COMPLAINT FOR DECLARATORY RELIEF - 13
CASE NO.
#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

(d) property damage to that particular part of any property than must be restored, repaired or replaced because "your work" as defined in the policy was incorrectly performed on it, pursuant to exclusion j(6);

(e) property damage to "your work" as defined in the policy arising out of it or any part of it and included in the products-completed operations hazard, pursuant to exclusion l;

(f) property damage to "impaired property" as defined in the Policies or to property that has not been physically injured, pursuant to exclusion m;

(g) the pollution exclusion(s) set forth in each of the Primary Policies pursuant to exclusion f in Coverage A and exclusions m and n in Coverage B;

(g) contractual liability exclusions, pursuant to exclusion b in Coverage A and exclusion f in Coverage B; and

(h) the intentional or knowing injury exclusion(s), which eliminate coverage for property damage expected or intended from the standpoint of the insured pursuant to exclusion a in coverage A, and eliminate coverage for personal and advertising injury caused by the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury" as defined in the Primary Policies pursuant to exclusion a in Coverage B.

4.13.    Under the Primary Policies, David Ebenal is not an insured except with respect to the conduct of Rockport's business, pursuant to Section II.1.c in the Policies.

4.14.    Each of the Primary Policies includes a section entitled "Commercial General Liability Conditions."  This section includes a subsection entitled "Duties in the Event of Occurrence, Offense, Claim or Suit."  Pursuant to this subsection, the named insured was required to notify ZAIC "as soon as practicable" of any "occurrence" or offense that might result in a claim. Under this subsection, the named insured further was required to notify ZAIC "as soon as practicable" of any suit against the insured.  Under this subsection, the named insured further is required to immediately send ZAIC copies of any "demands, notices, summonses or legal papers received in connection with the claim or 'suit'."  Defendants have breached these policy conditions

COMPLAINT FOR DECLARATORY RELIEF - 14
CASE NO.
#5094752 v1 / 10007-596

Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

by failing to notify ZAIC of the Underlying Action until approximately two years and three months after the Underlying Action was filed.  Plaintiff ZAIC may or has been prejudiced by defendants' late notice of the Underlying Action.

## V.    SECOND CLAIM FOR RELIEF: DECLARATORY JUDGMENT RE UMBRELLA POLICIES ISSUED BY AGLIC

5.1.    Plaintiffs reallege the allegations in paragraphs 1.1 through 4.14 as if fully set forth herein.

5.2.    The commercial umbrella liability insurance policies identified in paragraphs 3.6 through 3.10 herein (hereinafter "Umbrella Policies") each provide two types of coverage, designated in the policies as Coverage A and Coverage B.

5.3.    The insuring agreement in Coverage A in each of the Umbrella Policies provides in relevant part that AGLIC will pay covered damages in a lawsuit against the insured in excess of "underlying insurance," to the extent the terms and conditions of "underlying insurance" are not inconsistent or in conflict with terms and conditions that apply to Coverage A.  For each of the Umbrella Policies, the "underlying insurance" is identified in a schedule set forth in the Umbrella Policy.  "Underlying insurance" relevant to this action consists of the Primary Policies identified in paragraphs 3.1 through 3.5 herein.

5.4.    In order for Coverage A to apply, all "underlying insurance" first must be exhausted.  If "underlying insurance" does not apply to damages, for reasons other than exhaustion of the applicable limits by payment of loss, then Coverage A does not apply to such damages.

5.5.    Coverage A in the Umbrella Policies follows the form of the pertinent "underlying insurance" except where specifically stated otherwise.  Because the Umbrella Policies follow form to each respective ZAIC Primary Policy, and there is no coverage under the ZAIC Primary Policies, there is likewise no coverage under Coverage A of the Umbrella Policies.

5.6.    Each of the Umbrella Policies also contains a care, custody or control exclusion that applies to Coverage A and which precludes coverage for property damage to real and personal property of others in the care, custody or control of the insured.  In addition to all other grounds

Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

for determining there is no coverage, this exclusion eliminates coverage for property damage allegedly caused by Ebenal or Rockport to the land that is the subject of the Underlying Action at any time when the land was not owned by Ebenal or Rockport.

5.7.    Coverage B in each of the Umbrella Policies is subject to its own terms, conditions and exclusions as set forth in the respective Umbrella Policy and is wholly independent of the terms and conditions of any underlying insurance.

5.7.    The insuring agreement in each of the Umbrella Policies provides in relevant part that the policy will provide coverage for amounts an insured becomes legally obligated to pay as damages because of "bodily injury," "property damage, or "personal and advertising injury" as defined in the Policy.

5.8.    The Underlying Complaint does not allege any cause of action against Ebenal or Rockport arising from an "insured contract," "bodily injury," or "personal and advertising injury as defined in the Umbrella Policies.

5.9.    To the extent the Underlying Complaint may be interpreted to allege liability because of "property damage" as defined in the Umbrella Policies, such property damage either did not occur while any of the Umbrella Policies were in effect, or liability because of such "property damage" is subject to exclusions set forth in Coverage B of the Umbrella Policies.

5.10.    Coverage B in the Umbrella Policies does not apply to the Underlying Action because any property damage or other injury alleged in the Underlying Complaint was not caused by an "occurrence" as defined in the Umbrella Policies.

5.11.    Coverage under Coverage B in each of the Umbrella Policies also is eliminated by exclusions set forth in Coverage B, including:

(a) property damage to property owned, rented, or occupied by the named insured, pursuant to exclusion 8.a;

(b) property damage to premises the named insured sells, gives away, or abandons, if the property damage arises out of any part of those premises, pursuant to exclusion 8.b;

COMPLAINT FOR DECLARATORY RELIEF - 16
CASE NO.
#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

(c) property damage to that particular part of real property on which the named insured or its contractors or subcontractors are performing operations, if the property damage arises out of those operations, pursuant to exclusion 8.e;

(d) property damage to that particular part of any property than must be restored, repaired or replaced because "your work" as defined in the policy was incorrectly performed on it, pursuant to exclusion 8.f;

(e) property damage to "your work" as defined in the policy arising out of it or any part of it and included in the products-completed operations hazard;

(f) the pollution exclusion(s) set forth in each of the Umbrella Policies;

(g) the products-completed operations hazard follow-form endorsement, which eliminates all coverage under Coverage B for any liability, damage, loss, cost or expense included in the products-completed operations hazard; and

(h) the intentional injury exclusion, which eliminates coverage for property damage expected or intended from the standpoint of the insured.

5.12.   Because Coverage A in the Umbrella Policies incorporate the terms of the underlying Primary Policies, including the form "Contractors Liability Insurance – Two or More Coverage Forms or Policies Issued by Us," the maximum total limit of liability under any combination of coverages under Coverage A in the Umbrella Policies that might apply to the Underlying Action is the highest limit of liability set forth in any one of the applicable Umbrella Policies.

5.13.   Under the Umbrella Policies, David Ebenal is not an insured except with respect to the conduct of Rockport's business, pursuant to the definition of "Insured" set forth in the Policies.

5.14.   Each of the Umbrella Policies includes a section entitled "Conditions." This section includes a subsection entitled "Notice of Occurrence, Claim or Suit." Pursuant to this subsection, the named insured was required to notify AGLIC "as soon as practicable" of any "occurrence" that might result in damages covered by the Policy. Under this subsection, the named insured further was required to notify AGLIC "as soon as practicable" of any suit against the insured that "is

Confidential \ Non Personal Data

1   reasonably likely to involve this policy." Under this subsection, the named insured further is

2   required to immediately send AGLIC copies of any "demands, notices, summonses or legal papers

3   received in connection with the claim or 'suit'." Defendants have breached these policy conditions

4   by failing to notify AGLIC of the Underlying Action until approximately two years and three

5   months after the Underlying Action was filed. Plaintiff AGLIC may or has been prejudiced by

6   defendants' late notice of the Underlying Action.

7                               VI.     PRAYER FOR RELIEF

8          WHEREFORE, plaintiffs pray for the following relief:

9          1.     For a declaratory judgment consistent with the allegations herein, including but not

10   limited to determinations that Zurich American Insurance Company has no duty to defend or

11   indemnify Ebenal or Rockport in the Underlying action, and that American Guarantee and

12   Liability Insurance Company has no duty to defend or indemnify Ebenal or Rockport in the

13   Underlying action;

14         2.     For an award of attorney's fees and other costs of litigation recoverable under

15   applicable statutes and common law; and

16         3.     For all such other relief this Court deems just and equitable.

17         Dated this 1st day of December 2021.

18                                        By: s/Jacquelyn A. Beatty

19                                        By: s/Robert A. Radcliffe

20                                        Jacquelyn A. Beatty, WSBA #17567
                                          Robert A. Radcliffe, WSBA #19035
21                                        KARR TUTTLE CAMPBELL
                                          701 Fifth Avenue, Suite 3300
22                                        Seattle, WA 98104
                                          Telephone:  206-223-1313
23                                        Facsimile:  206-682-7100
                                          Email:  jbeatty@karrtuttle.com
24                                        Email:  rradcliffe@karrtuttle.com
25
                                          Attorneys for Plaintiffs Zurich American Insurance
26                                        Company and American Guarantee and Liability
                                          Insurance Company
27

COMPLAINT FOR DECLARATORY RELIEF - 18
CASE NO.

#5094752 v1 / 10007-596
Confidential \ Non Personal Data

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100